IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MALINDA HOFFMAN,

          Plaintiff,

      v.

FOREMOST SIGNATURE INSURANCE
COMPANY,

          Defendant.

_____

Civ. No. 6:12-cv-1534-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Malinda Hoffman brings this action seeking damages for alleged breach of an

insurance policy covering her manufactured home. Both plaintiff and defendant filed motions for

summary judgment. This Court has jurisdiction under 42 U.S.C. § 1332. Upon review,

defendant's motion for summary judgment (#16) and plaintiff's motion for summary judgment

(#23) are GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

      This action arises out of a claim that plaintiff filed under her Foremost Signature

homeowners insurance policy. Plaintiff purchased a manufactured home in Springfield in August

2008 and insured the home with Foremost Signature effective May 4, 2011. Decl. of Kyle A.

Sturm 2, May 14, 2013, ECF No. 19-3. Plaintiff filed a petition for bankruptcy on May 10, 2011,

which resulted in discharge and closure of the estate on August 15, 2011. *In re* Malinda

Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011). On August 18, 2011, plaintiff contacted her

1 – OPINION AND ORDER

insurance agent and requested to increase her policy limits for the manufactured home from $96,000 to $131,000 and for her personal property from $55,000 to $65,000. Def.'s Concise Statement of Material Fact ¶ 17, ECF No. 18. Defendant extended coverage for plaintiff's personal property but not her manufactured home. On August 22, 2011, plaintiff's manufactured home caught on fire and was subsequently determined to be a total loss. *Id.* at ¶ 19 & 20. Plaintiff submitted a "Proof of Loss" on February 27, 2011 seeking $115,200[1] per dwelling coverage, $9,600 per other structures coverage, $65,000 per personal property coverage, $19,000 per additional living expenses coverage, $5,000 per debris removal coverage, and $9,600 per code upgrade coverage for a total of $223,600. *Id.* at ¶ 21.

Defendant paid $96,000 toward dwelling coverage, $3,200 toward other structures coverage [payment 13], $65,500[2] toward personal property coverage, $7,678.50[3] toward additional living expenses, and $5,000 toward debris removal [payment 12] for a total of $177,378.50. *Id.* at ¶ 24; *see also infra* (Table 1). Plaintiff initially placed a down payment on a "replacement" manufactured home, but later withdrew it. Decl. of Kyle A. Sturm 3, May 14, 2013, ECF No. 19-7. Plaintiff then sought to replace her destroyed manufactured home with an Adair "stick-built" home. Decl. of Kyle A. Sturm 1, May 14, 2013, ECF No. 19-13. Defendant advised plaintiff that the policy did not provide additional replacement cost benefits for a "stick-built" home because it was not a new dwelling of like kind and quality per contract. Decl. of Kyle A. Sturm 1, May 14, 2013, ECF No. 19-8. Plaintiff did not replace her manufactured home or any other structures on her property, including a deck, septic pump house and storage shed, as

---

[1] Plaintiff sought "$96,000 + 20%." Def.'s Concise Statement of Material Fact ¶ 21, ECF No. 18. Twenty percent of $96,000 is $19,200. Thus, combined, $96,000 and $19,200 amount to $115,200.

[2] Plaintiff contends that defendant's final payment of $10,500 on September 20, 2012, more than four months after the prior personal property payment on May 9, 2012, constitutes breach of contract as to this additional payment.

[3] Defendant contends that the additional living expenses payment covers the period from the date of fire (August 22, 2011) until April 30, 2012.

2 – OPINION AND ORDER

of March 28, 2013. *See* Decl. of Kyle A. Sturm 3 & 6-7, ECF No. 19-7. Following the fire,

plaintiff stayed at a hotel, and then subsequently moved in with her in-laws, who charged her

$1,125 per month in rent. Decl. of Malinda Hoffman 1, ECF No. 24-4.

 Plaintiff now seeks at least $39,975.65[4] for alleged breach of the insurance policy

covering her manufactured home. *See infra* (Table 1).

**Table 1**

| Coverage | Insurance | Paid | Sought | Complaint |
|---|---|---|---|---|
| **Dwelling** | $96,000 | $96,000 | $0 | $0 |
| **Replacement Dwelling (20%)** | $19,200 | $0 | $18,927.65 | up to $20,000 |
| **Other Structures** | $9,600 | $3,200 | $10,600 | up to $8,000 |
| **Personal Property** | $65,000 | $65,500 | *[5] | up to $28,000 |
| **Additional Living Expenses** | $19,200 | $7,678.50 | at least $3,048 | up to $15,000 |
| **Debris Removal** | $5,000 | $5,000 | $0[6] | up to $3,000 |
| **Ordinance & Law Coverage** | | $0 | $5,400 | up to $10,000 |
| **Landscape & Miscellaneous** | | $0 | $2,000 | up to $2,000 |
| **Total** | $214,000 | $177,378.50 | at least $39,975.65 | up to $86,000 |

*See* Pl.'s Mot. Summ. J. 4, ECF No. 23-1; Pl.'s Resp. to Def.'s Reply to Pl.'s Mot. Summ. J. 14,

ECF No. 32; Compl. 3-4, ECF No. 1.

## STANDARD OF REVIEW

 The court must grant summary judgment if there are no genuine issues of material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of

fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the

nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)

---

[4] This figure is derived from Table 1.
[5] Plaintiff seeks "an award of attorney's fees, and pre-judgment interest at the rate of 9% per annum from August, 2011 until September 20, 2012. Pl.'s Mot. Summ. J. 4, ECF No. 23-1.
[6] Plaintiff no longer seeks damages under debris removal coverage and summary judgment is granted for defendant as to this issue. *See* Pl.'s Mot. Summ. J. 16, ECF No. 23-1.

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court views the

evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66

F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127,

1130 (9th Cir. 1994)).  If the moving party shows that there are no genuine issues of material fact,

the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. (56)(c).

## DISCUSSION

Defendant contends that: (1) plaintiff is judicially estopped from valuing her

manufactured home and personal property at higher rates than in her prior bankruptcy

proceeding; (2) plaintiff is precluded from "replacement" dwelling coverage because she failed

to replace her dwelling with a dwelling "of like kind and quality" within 365 days; (3) plaintiff is

precluded from additional "other structure" coverage because she failed to replace and received

actual cash value for these other structures; (4) plaintiff is precluded from "ordinance or law"

coverage because she did not incur any building ordinance or law expenses; and (5) plaintiff is

precluded from additional "personal property" coverage because she received her full policy

limit.  In response and upon her own motion, plaintiff contends that defendant failed to fully

compensate her for adjusted living expenses under the contract and violated its duty of good faith

and fair dealing.

## I. Judicial Estoppel

Defendant contends that plaintiff's claims for damages resulting from loss of (a) her

manufactured home and (b) her personal property should be limited to the value she provided in

her prior bankruptcy proceedings pursuant to Schedule A & B ($1 and $5,000 respectively).  This

Court may invoke the doctrine of judicial estoppel at its own discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Casualty Company*, 270 F.3d 778, 782 (9th Cir. 2001). In *New Hampshire*, the Supreme Court indicated that "several factors typically inform the decision whether to apply the doctrine in a particular case." 532 U.S. at 750. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. In enumerating these factors, the Supreme Court held that these factors did "not establish inflexible prerequisites" and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.*

## A. Plaintiff's Manufactured Home

Under 11 U.S.C. § 521(1), a "debtor shall file…a schedule of assets and liabilities." *See also Hamilton*, 270 F.3d at 785 (quoting *In re Coastal Plains*, 179 F.3d at 207-08) (internal quotation marks omitted) ("The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets . . . ."). Plaintiff listed the value[7] of her

---

[7] Under Schedule A and B, "value" is defined as "current value of debtor's interest in property without deducting any secured claim or exemption." 11 U.S.C. § 506(a)(2) further provides that "[w]ith respect to property acquired

manufactured home as $1 under Bankruptcy Schedule A and then subsequently valued her manufactured home at $96,000 or more[8] in her proof of loss claim. Defendant contends that plaintiff's differing positions as to the value of her manufactured home are clearly inconsistent. Defendant's argument is unpersuasive.

First, this Court recognizes that plaintiff, appearing *pro se* in her bankruptcy petition, is entitled to additional leniency to the extent that her errors were inadvertent.[9] Second, plaintiff's "representations" as to her manufactured home value are more nuanced than articulated by defendant. For example, on Schedule A, plaintiff listed the "Amount of Secured Claim" corresponding to her residence as $135,000. Chapter 7 Voluntary Petition 11, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 1. Likewise, on Schedule C, plaintiff provided a "current value of property without deducting exemption" of her residence as $140,000. *Id*. at 15; *See also Id*. at 16 (listing "value of property subject to lien" as $140,000 on Schedule D). Accordingly, plaintiff's representations as to the value of her manufactured home are "not so inconsistent that they amount to an affront to the court" and summary judgment is denied for defendant as to this issue. *See Johnson*, 141 F.3d at 1369.

## B. Plaintiff's Personal Property

Under Schedule B, a petitioner is directed to "list all personal property of the debtor of whatever kind." Chapter 7 Voluntary Petition 13, *In re* Malinda Hoffman, No. 11-62267-fra7

---

for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."
[8] Plaintiff sought $96,000 + 20%." Def.'s Concise Statement of Material Fact ¶ 21, ECF No. 18.
[9] *See e.g.*, *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000) (citing *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th x) ("The doctrine of judicial estoppel requires, inter alia, a knowing antecedent misrepresentation by the person or party alleged to be estopped . . . ."); *Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) (citing *In re Corey*, 892 F.2d 829, 836 (9th Cir. 1989) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."). In *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, the Ninth Circuit found that "[o]ur decisions in *Wyler Summit* and *Johnson* are largely harmonizable with the Supreme Court's in *New Hampshire* . . . ." 692 F.3d 983, 995 (9th Cir. 2012).

(Bankr. D. Or. 2011), ECF No. 1; *see also* 11 U.S.C. § 521(1). Plaintiff listed the value of her "personal property" as $5,000 under Bankruptcy Schedule B and then subsequently valued her personal property at $65,000 or more[10] in her proof of loss claim. Plaintiff also indicated that the only[11] property she owned was "[h]ousehold goods and furnishings, including audio, video, and computer equipment."[12] Chapter 7 Voluntary Petition 12-14, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 1. In so doing, Plaintiff described her "household goods and furnishings" as "Clothing and Household Goods." *Id*. at 12. Defendant contends that plaintiff's differing positions as to the value of her personal property are clearly inconsistent and require judicial estoppel. Although a closer decision than analysis *supra* § I(A), this Court also finds defendant's argument unpersuasive as to plaintiff's personal property.

First, this Court recognizes the difference between the "current" and the "replacement" value of an item of personal property, i.e., the value difference between used and new items. This distinction is important because plaintiff's "$5,000" figure is a "current value," and plaintiff's "$142,472" figure is a "replacement cost." Both parties dispute the significance of the valuation differences between "current" and "replacement" value. From plaintiff's perspective, judicial estoppel should be precluded because of the inherent difference between "current" and "replacement" value. *See, e.g.*, *infra* § I(B); Letter from Ronald R. Sticka 1, ECF No. 39.

From defendant's perspective, valuation differences can be avoided through a supplemental estimate. Per defendant's estimate, the "current" value of her personal property

---

[10] In Plaintiff's "Contents Evaluation Form," she indicated that the replacement cost for her lost personal property was $142,472. Decl. of Kyle A. Sturm 88, May 14, 2013, ECF No. 19-18.
[11] As to all other "type[s] of property," plaintiff indicated by "x" that she had no "property."
[12] In all other categories of "Type of Property," plaintiff indicated that she owned "None." For example, other "type of property" includes, but is not limited to: "Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disk, and other collections or collectibles." Chapter 7 Voluntary Petition 13-15, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 1.

included on her Contents Evaluation Form should have been listed as $66,928.72 instead of $5,000 as listed on Schedule B. Thus, according to defendant, even with consistent[13] valuation schemes, plaintiff understated the value of her personal property by over $60,000 and should be estopped from further recovery. This Court is not persuaded that this valuation difference is "clearly inconsistent." To begin, as indicated *supra* § I(A), plaintiff is entitled to additional leniency to the extent that her valuation errors were inadvertent. *See supra* (footnote 9). Next, in reopening and then abandoning the Bankruptcy estate property subsequent to the filing of plaintiff's claim in this case, the United States Trustee found "no further value" in the insurance claim. Notice of Intent To Abandon 1, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 26. Finally, because both parties dispute the "actual" value of plaintiff's personal property, there remains a genuine issue of material fact as to the "actual" value of this property.

Second, this Court also recognizes that "valuation" differences are not relevant with respect to property plaintiff denied owning in Bankruptcy Schedule B. Thus, plaintiff's claim is restricted to those classes of personal property identified in Schedule B, i.e., clothing, household goods, or furnishings. *See* Chapter 7 Voluntary Petition 12-14, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 1. For example, plaintiff is precluded from claiming books, item 550, 551 and 552. Decl. of Kyle A. Sturm 44, May 14, 2013, ECF No. 19-18. However, this Court is reluctant to assess and determine whether 1,189 individual items of personal property fall within the scope of these accepted categories; this is particularly true in

---

[13] Defendant asserts that "[t]hese valuation methods are strikingly similar; each takes into consideration the 'worth' of each item giving particular weight to age and condition of each item." Def.'s Reply to Mot. Summ. J. 6, ECF No. 30.

light of the fact that many items arguably qualify as "household goods."[14] This Court finds that there is a genuine issue of material fact as to the nature of plaintiff's personal property items.

Third, this Court is not persuaded that plaintiff's earlier representations satisfy *New Hampshire*'s second factor. Under the second factor, this Court assesses whether plaintiff's representations "create the perception that the Bankruptcy Court or this Court has been misled." *New Hampshire*, 532 U.S. at 750. On August 16, 2013, the United States Trustee, in response to a letter from this Court,[15] reopened plaintiff's case to assess whether "additional assets for possible distribution" existed. Order Reopening Case: Trustee Reappointment 1, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 24. On September 10, 2013, the United States Trustee filed a notice of intent to abandon estate's interest in debtor's litigation claim pursuant to belief that "no further value" existed in the insurance claim. Notice of Intent To Abandon 1, *In re* Malinda Hoffman, No. 11-62267-fra7 (Bankr. D. Or. 2011), ECF No. 26. The United States Trustee further provided that "[v]aluation in bankruptcy cases is far different than determining replacement value for purposes of insurance coverage" and "[i]t is the rare case where debtor schedules more than $5,000 in household furnishings, and often the number is closer to $3,000." Letter from Ronald R. Sticka 1, ECF No. 39. Accordingly, summary judgment is denied for defendant as to this issue.

## II. Plaintiff's Claim for "Replacement" Dwelling Coverage

Defendant contends that plaintiff is precluded from additional "replacement" dwelling coverage because plaintiff did not replace her dwelling with a dwelling of "like kind and quality"

---

[14] For example, is a WII consul considered audio, video or computer equipment or, in the alternative, is a WII consul considered hobby equipment? *See* Decl. of Kyle A. Sturm 2, May 14, 2013, ECF No. 19-18 (item 1).

[15] In relevant part, this Court's letter stated "[i]t has come to the attention of this court that a substantial discrepancy exists between plaintiff Malinda Hoffman's Schedule B Personal Property disclosures . . . and her subsequent claim for personal property losses arising under insurance contract . . . ." Minute Order, ECF No. 34-1.

within 365 days. Defendant's argument rests on two basic premises; first, that defendant rightfully interpreted the contractual provision "of like kind and quality" to preclude coverage to a "stick-built" home; and second, that plaintiff is precluded from "replacement" dwelling coverage because she failed to replace her dwelling with a dwelling "of like kind and quality" within 365 days.

## A. Interpretation of "Like Kind and Quality"

"Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties to the insurance policy." *Holloway v. Republic Indemnity Co. of America*, 341 Or. 642, 649 (Or. 2006) (citing *Hoffman v. Construction Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (Or. 1992)). This Court "determines the intention of the parties based on the terms and conditions of the insurance policy." *Id*. at 649-50 (citations omitted). "If the policy does not define the phrase in question, [this Court resorts] to various aids of interpretation to discern the parties' intended meaning." *Id*. at 650 (quoting *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 307-08 (Or. 1999)) (internal quotation marks omitted). Under that framework, this Court first considers whether the phrase in question has a plain meaning. *Id*. (citations omitted). "If the phrase in question has more than one plausible interpretation," this Court will then "examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id*. (citations omitted) (internal quotation marks omitted). "If the ambiguity remains after [this Court] has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company." *Id*. (citations omitted) (quoting *North Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 25 (Or. 2001)) (internal

10 – OPINION AND ORDER

quotation marks omitted). However, "a term is ambiguous . . . *only* if two or more

plausible interpretations of that term withstand scrutiny." *Hoffman*, 313 Or. at 470.

> The contract provides, in relevant part:
>
> If you do not replace your dwelling on the same **premises**, we will pay the Amount of Insurance shown on the Declarations Page.
>
> If you do replace your dwelling on the same **premises** with a new dwelling *of* like kind and quality within 365 days of the loss, and if the cost to replace your dwelling exceeds the Amount of Insurance we have already paid to you, we will pay the additional amount that you actually spend for the replacement. But we will not pay any more than an additional 20% of the Amount of Insurance shown on the Declarations Page.

Decl. of Kyle A. Sturm 4, May 14, 2013, ECF No. 19-14. The contract does not provide an

explicit definition for the phrase of "like kind and quality." Therefore, this Court "must decide

whether that phrase has a plain meaning." *Holloway*, 341 Or. at 650.

This Court first turns to the dictionary definitions. The term "like" is defined as

"possessing the characteristics of; resembling closely; similar to." AMERICAN HERITAGE

DICTIONARY OF THE ENGLISH LANGUAGE 1014 (4th ed. 2000); *see also* THE OXFORD-ENGLISH

DICTIONARY Vol. VIII, 944 (2d ed. 2001) ("Having the same characteristics or qualities as some

other . . . thing). The term "kind" is defined as "[a] natural quality, property or characteristic."

THE OXFORD-ENGLISH DICTIONARY Vol. VIII, 436 (2d ed. 2001); *see also* AMERICAN HERITAGE

DICTIONARY OF THE ENGLISH LANGUAGE 964 (4th ed. 2000) ("3. Fundamental, underlying

character as a determinant of the class to which a thing belongs."). The term "quality" is defined

as "[a]n inherent or distinguishing characteristic; a property." AMERICAN HERITAGE DICTIONARY

OF THE ENGLISH LANGUAGE 1431 (4th ed. 2000); *see also* THE OXFORD-ENGLISH DICTIONARY

Vol. XII, 971 (2d ed. 2001) ("the nature, kind, or character (of something)"). Collectively, these

definitions require a replacement dwelling to possess similar qualities and/or characteristics to that of the lost dwelling.

Defendant and plaintiff offer differing plain meaning interpretations of "like kind and quality." Defendant, in articulating a more restrictive interpretation, argues that an Adair "stick-built" home is simply too different from a manufactured home to be of like kind and quality. For example, defendant explains that unlike a manufactured home, a "stick-built" home is subject to a different statutory framework,[16] is generally more durable and of higher quality, usually appreciates in value, is created at site and built upon a permanent foundation, and requires a different insurance policy. Mem. in Supp. of Def.'s Mot. Summ. J. 13-14, ECF No. 17.

In contrast, plaintiff, in articulating a more flexible interpretation, makes two arguments. First, plaintiff contends that an Adair home is sufficiently similar to a manufactured home because both are "single family dwellings with four walls" and "a roof." Pl.'s Resp. to Def.'s Reply to Pl.'s Mot. Summ. J. 5, ECF No. 32. Second, plaintiff looks to non-precedential case law[17] for the proposition that "like construction" should be interpreted as a "limit on replacement cost, not a requirement that the insured replace with identical materials."[18] Pl.'s Mot. Summ. J. 7, ECF No. 23-1.

Because both parties offer plausible explanations, this Court next examines these respective arguments "in light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or. at 470.

---

[16] For example, an Adair home is subject to Or. Rev. Stat. § 455 (2011), while a manufactured home is subject to Or. Rev. Stat. § 446 (2011) and the Manufactured Home Construction and Safety Standards Code. Mem. in Supp. of Def.'s Mot. Summ. J. 13, ECF No. 17. Likewise, a stick-built home is subject to "strict building codes that govern the inspection, construction, types of materials used and how the stick-built home is appraised for lending purposes." *Id.* at 14.

[17] Plaintiff cites *Hess v. North Pacific Ins. Co.*, 859 P.2d 586, 588 (Wash. 1993) and *Conway v. Farmers Home Mut. Ins. Co.*, 26 Cal. App. 4th 1185, 1192 (Cal. Ct. App. 1994). Pl.'s Mot. Summ. J. 7, ECF No. 23-1.

[18] Plaintiff contends that "the only question is what was lost, not what Plaintiff wants to replace it with." Pl.'s Mot. Summ. J. 8, ECF No. 23-1.

12 – OPINION AND ORDER

Plaintiff's broad interpretation of "of like kind and quality" equates this restriction with the term "dwelling"[19] and thereby eliminates the second restriction entirely. In other words, if all dwellings are "of like kind and quality" because they provide "four walls" and a "roof," then this contractual restriction is meaningless and any timely replacement with a new "dwelling" is effective under the contract. For example, if plaintiff had replaced her manufactured home with a bunker or houseboat, such a "shelter" would qualify under her interpretation as "of like kind and quality." Such a result is unreasonable when considered in light of the type of insurance being provided, i.e., "manufactured home insurance," and the underlying purpose of replacement coverage, i.e., to restore property without deducting value loss caused by depreciation.[20] Accordingly, plaintiff's interpretation is unreasonable.

## B. Dwelling Replacement

Defendant contends that plaintiff is precluded from "replacement" dwelling coverage because she failed to replace her dwelling within 365 days. In response, plaintiff argues first, that a 365 day replacement period is void under Oregon law, and second, that actual replacement is not required under the contract. Plaintiff's arguments are unpersuasive.

In her first argument, plaintiff directs this Court's attention to ORS § 742.234. ORS § 742.234, "Insurers options" states:

---

[19] The contract does not explicitly define the term "dwelling." However, per dictionary definition, a "dwelling" is defined as "a place to live in; an abode" or as a "residence." *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 558 (4th ed. 2000); *see also* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 412 (1988). Moreover, a "residence" is defined as "[t]he place in which one lives; a dwelling." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1483 (4th ed. 2000). Thus, theoretically, any replacement that is a "place" to live" may qualify for reimbursement.

[20] In *Higgins v. Insurance Co. of North America*, the Oregon Supreme Court explained "[d]epreciation insurance, sometimes called Replacement cost insurance, pays for full replacement cost new of the insured property, without deduction for depreciation. It provides indemnity for the expenditures the insured is obliged to make over and above the amount of the loss covered by full insurance under the standard fire policy in order to *restore the property to its full usefulness as before the loss or damage*." 256 Or. 151, 163 (Or. 1970) (emphasis added).

A fire insurance policy shall contain a provision as follows: "It shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required."

OR. REV. STAT. § 742.234 (2011). Plaintiff, relying upon this provision,[21] claims that the 365 day replacement period is unreasonable. Plaintiff is mistaken. To begin, plaintiff is correct in arguing that defendant is required to include the policy provision (or analogous provision) listed above. Likewise, under ORS § 742.234, an insurer is precluded from exercising its discretionary replacement right within a time period that is not "reasonable."[22] However, there is no indication that defendant attempted to exercise its right under ORS § 742.234. To the extent that plaintiff argues that the 365 replacement period is not "within a reasonable time" under ORS § 742.206,[23] plaintiff's argument is not supported by Oregon case law.[24]

In her second argument, plaintiff contends that actual replacement is not required, or in the alternative, that application of this replacement provision to plaintiff would be inequitable because of ongoing negotiations with defendant as to the value of an applicable replacement "dwelling" during the replacement period. Contrary to plaintiff's first assertion, actual replacement is generally considered a prerequisite to recovery under an insurance replacement

---

[21] Plaintiff subsequently cited ORS § 742.206 for the argument that the 365 day replacement period is unreasonable.
[22] Plaintiff initially argued that ORS § 742.234 created a "replacement" right for plaintiff (the insured). However, plaintiff's interpretation of ORS § 742.234 is incorrect. The provision, titled "Insurers options," provides that it is "optional with this company" to replace within a reasonable time, on "giving notice of its intention to do so." The pronoun "its" must refer to "the company" because no other noun is referenced in the provision.
[23] "742.206 Insuring agreement. A fire insurance policy shall contain provisions as follows . . . . repair or replace the property with material of like kind and quality within a reasonable time after such loss." OR. REV. STAT. § 742.206 (2011).
[24] See, e.g., Higgins 256 Or. at 164 (citations omitted) ("it is usual to provide that repairs or replacements shall be completed with due diligence and dispatch, ordinarily within 12 months."); Bourie v. U.S. Fidelity and Guar. Ins. Co., 75 Or.App. 241, 246-47 (Or.App. 1985) (construing "ambiguity" in the contract against the drafter, but indicating that the insurer could have provided clear language (180 days) to make the provision enforceable); see also, Patton, 238 Or.App. at 106 & 120 (upholding two-year replacement period).

14 – OPINION AND ORDER

provision in Oregon. For example, in *Higgins*, the Oregon Supreme Court held that "since plaintiffs have not expended anything in repairing or replacing the insured building they are not eligible to recover under the 'Replacement Cost' extension of the policy." 256 Or. at 166; *accord Patton v. Mutual of Enumclaw Ins. Co.*, 238 Or.App. 101, 122 (Or. App. 2010) ("We conclude that . . . in the absence of actual replacement, [defendant] had no duty to pay more than the actual cash value of the destroyed property, up to a maximum of the policy limit . . . .").

Plaintiff argues that *Higgins*[25] and *Patton* are distinguishable because they involve "agreed upon" replacement costs. Pl.'s Resp. to Def.'s Reply to Pl.'s Mot. Summ. J. 11, Aug. 2, 2013, ECF No. 32. For this proposition, plaintiff quotes language in *Patton*—"[i]t is true, as plaintiff points out, that [insurer] told plaintiff that he could build the house that he wanted, with the builder of his choice, and that [insurer] would reimburse plaintiff for the costs to rebuild the house." *Id*. (quoting *Patton*, 238 Or.App. at 123). Yet, *Patton*'s next sentence provides— "[h]owever, [insurer] also consistently qualified those statements . . . cost coverage was subject to the conditions and terms of the policy including the requirement that construction actually be completed and that [insurer] would pay only the lesser cost of replacing the house with one of *like construction* . . . ." 238 Or.App. at 123 (emphasis added). To put both sentences into context, in *Patton*, the insurer favored an Oregon Home Improvement Company (OHIC) bid of $1,544,000 while the insured favored a Custer Construction bid of $3,858,000. *Id*. at 105 ("Plaintiff expressed doubt that the house could be rebuilt" under the OHI bid). In response to the discrepancy between the bids, the insurer advised the insured that he "was free to choose a different builder, but that, if the costs exceeded OHI's bid, the difference will have to be

---

[25] In *Higgins*, the insurer refused to pay the insured under the policy because the insurer believed that the insured lacked an insurable interest. 256 Or. at 155. The insurer also argued that because the insured did not replace the property that the insured should be limited to the value of the property at the time of loss ($6,500) instead of the policy limit of $17,000. *Id*. at 160. There is no indication that a dispute as to the replacement cost ever arose.

reconciled or *you may be responsible for those additional costs*." *Id*. at 106 (emphasis added) (internal quotation marks omitted). Thus, at least in *Patton*, the replacement cost was disputed.

As to plaintiff's second assertion, ongoing negotiations between the parties do not make application of the replacement provision inequitable. First, this Court declines to consider ongoing discussion regarding the Adair stick home because the Adair home is not a dwelling of "like kind and quality" and defendant did not lead plaintiff to believe otherwise. Second, the factual circumstances of plaintiff's claim line up closely with those in *Patton*. In this case, defendant provided plaintiff with a replacement estimate of between $90,054 and $103,500. Decl. of Malinda Hoffman 1, ECF No. 24-8. Plaintiff, doubting the accuracy of defendant's estimate, obtained her own estimate of $126,098. Decl. of Malinda Hoffman 1, ECF No. 24-10. Defendant, as in *Patton*, advised plaintiff that her home could be replaced for the lower estimate ("$90,054.00 - $103,500.00") and that "[t]here could still be an additional payment once [insurer] verified that the potential purchase is a like kind and quality manufactured home to what [plaintiff] had before." Decl. of Malinda Hoffman 1, ECF No. 24-8. Third, plaintiff's reliance on *Great American Ins. Co. of New York v. Jackson County School District* is misplaced. 2007 WL 2713894 (D. Or. Sep. 17, 2007). In *Great American*, the District Court, in ruling against the insurer's non-replacement affirmative defense, found that "[i]t was impractical for [insured] to proceed with replacement until the parties (or the court) determines the extent of [insurer's] obligations . . . ." *Id*. at *5. However, unlike in plaintiff's case, in *Great American*, the parties agreed upon the type and location of the replacement building but differed as to the specific materials that qualified as "like kind and quality" subject to a modifying provision.[26] To

---

[26] The relevant modifying provision provided that "[t]he replacement cost of the property or any part thereof *identical* with such property and intended for the same occupancy and use." 2007 WL 2713894 at *2. (emphasis added). The insurer argued that the former "barrel-dome roof" of an ornate and elaborate design (valued at

the extent that *Great American* stands for the general proposition that actual replacement is not required until an insurer agrees to a final replacement sum, *Great American* is not supported by Oregon law. *See, e.g.*, *Patton*, 238 Or.App. at 122. Accordingly, summary judgment is granted to defendant as to this issue.

## III. Plaintiff's Claim for Other Structures

Defendant contends that plaintiff is precluded from additional recovery under "Other Structures" coverage because plaintiff failed to replace her lost other structures and plaintiff received the actual cash value of her lost other structures. In response, plaintiff argues that defendant did not adequately reimburse her, actual cash value or otherwise, for the loss of her porch, septic pump or storage shed.

Turning first to the insurance contract, "COVERAGE B – OTHER STRUCTURES" provides:

The amount we pay for loss to your other structure will be the lowest of:

1. The replacement cost of the damaged portion of your other structure.

2. The amount *actually spent* for necessary repair or replacement of the damaged portion to your other structure.

3. The Amount of Insurance shown on the Declarations Page

If the replacement cost for your damaged property is more than $2,500, we will pay no more than the actual cash value of that damage *until actual repair or replacement is completed*.

Decl. of Kyle A. Sturm 4, May 14, 2013, ECF No. 19-14 (emphasis added). As indicated *supra* § II(B), Oregon law requires actual replacement for replacement-based coverage. *See, e.g.*,

---

$719,280) could be replaced using a simple truss design and cheaper materials (valued at $193,000). In response, the insured argued that the "identical" modifier precluded interpreting "like kind and quality" as "functional equivalent." *Id.* at *2.

*Higgins*, 256 Or. at 166. Thus, because plaintiff has not replaced her other structures, she is precluded from replacement-based recovery for other structures under the contract.

As to the coverage dispute, plaintiff argues that she lost three[27] qualifying "other structures" including a deck, a septic pump, and a storage shed. Pl.'s Mot. Summ. J. 6, ECF No. 23-1. To date, defendant has tendered a $3,200 "other structure" payment "for the actual value of the damages to [insured's] other structures (Front and Side Porches)." Decl. of Kyle A. Sturm 9, May 14, 2013, ECF No. 19-15. Thus, the parties remain in disagreement as to the actual value of plaintiff's lost porch, and the applicability of the insurance policy as to the septic pump and storage shed. Under the contract, defendant was only obligated to insure plaintiff for those other structures "that are separated from [insured's] dwelling." Decl. of Malinda Hoffman 21, ECF No. 24-2. Defendant argues, based upon a photograph provided by plaintiff, that the storage shed is not a qualifying other structure.[28] In response, plaintiff relies upon her own declaration affirming that the septic pump and storage shed were not attached to the manufactured home. Pl.'s Mot. Summ. J. 6, ECF No. 23-1. Collectively, neither party has demonstrated that there is not a genuine issue of material fact as to the appropriateness of the "actual cash value" payment made towards plaintiff's porch or the applicability of the "other structures" policy provision to plaintiff's septic pump and storage shed. Accordingly, summary judgment is granted to defendant to preclude other structures "replacement costs," but denied as to the outstanding actual cash value and coverage disputes.

## IV. Plaintiff's Claim for Ordinance and Law Coverage

---

[27] In plaintiff's deposition, she stated "there w[ere] two separate structures . . . . There's the porch and the shed." Decl. of Kyle A. Sturm 6, May 14, 2013, ECF No. 19-7. Yet, in her motion, plaintiff claim's that "[t]here were three unattached structures." Pl.'s Mot. Summ. J. 6, ECF No. 23-1.

[28] In Decl. of Malinda Hoffman 4, ECF No. 24-14, the photograph appears to depict an attached storage shed, i.e., a storage shed not separated from plaintiff's manufactured home.

Defendant contends that plaintiff is precluded from "ordinance or law" coverage because she did not incur any relevant "ordinance or law" expenses. In response, plaintiff again argues that actual expenditure is not required, or in the alternative, that application of this "expenditure" provision to plaintiff would be inequitable because of ongoing negotiations with defendant as to the value of an applicable replacement "dwelling." Plaintiff's arguments are precluded under Oregon law. *See supra* § II(B).

Under the "Ordinance or Law" section, the insurer is obligated to "pay the actual, reasonable and necessary cost" for the increased costs associated with construction, repair, renovation, or demolition of an insured structure or dwelling. Decl. of Kyle A. Sturm 10, May 14, 2013, ECF No. 19-4. To date, plaintiff has not incurred any qualifying ordinance or law expenses. Accordingly, summary judgment is granted to defendant as to this issue.

## V. Plaintiff's Claim for Personal Property

Defendant contends that plaintiff is precluded from further "personal property" recovery because plaintiff received her full policy limits. In response, plaintiff argues that defendant failed to timely pay her full limits under the policy.

Under the "Coverage C – Personal Property" section, plaintiff was presented with two payment methods for insured personal property; the "Replacement Cost Payment Method" and the "Actual Cash Value Payment Method." Decl. of Kyle A. Sturm 7, May 14, 2013, ECF No. 19-4. Of these options, plaintiff selected[29] the "Actual Cash Value Payment Method" and submitted her "Proof of Loss" on approximately February 27, 2012. Decl. of Kyle A. Sturm 2, May 14, 2013, ECF No. 19-11. Under either method, plaintiff was entitled[30] to "[t]he Amount of

---

[29] There is no indication that plaintiff replaced or repaired lost personal property.
[30] Defendant was obligated to pay the "lowest of" (1) actual cash value, (2) amount actually expended on repair or replacement, (3) amount of insurance shown in declarations page, or (4) applicable special amount of insurance on

Insurance shown on the Declarations Page" ("policy limit"). Decl. of Kyle A. Sturm 7, May 14, 2013, ECF No. 19-4. Plaintiff's policy limit was initially disputed, $55,000 or $65,000, pending an investigation. However, in a letter dated March 26, 2012, defendant recognized that plaintiff's policy limit had been modified to $65,500. Decl. of Malinda Hoffman 1, ECF No. 24-6.

    Defendant and plaintiff now dispute the timeliness of payments made under the policy. Defendant ultimately paid plaintiff the policy limit, $65,500, over five payments. Defendant's first two payments, $2,500 and $7,500, were characterized as "advances" and paid on August 23, 2011 and February 10, 2012, respectively. Decl. of Kyle A. Sturm 2 & 6, May 14, 2013, ECF No. 19-15. Defendant's third payment, $38,473.39, paid on March 15, 2012, was characterized as payment "based on [plaintiff's] contents valuation report." *Id*. at 8. Defendant's fourth payment, $6,526.61, paid on May 9, 2012, corresponds to defendant valuing plaintiff's lost property at an actual cost value of $66,928. *Id*. at 12; Decl. of Malinda Hoffman 28, ECF No. 24-3. Defendant's fifth and final payment, $10,500, was paid September 20, 2012. Decl. of Kyle A. Sturm 13, May 14, 2013, ECF No. 19-15.

    Plaintiff contends that defendant's final payment, made more than four months after the proceeding payment, represents a breach of contract. Moreover, plaintiff contends that defendant's failure to timely pay under the contract forced plaintiff to file this suit on August 24, 2012; nearly one month before defendant's fifth payment under the policy. In contrast, defendant argues that its payment delay was a mere mistake, not rising to the level of breach of contract. Defendant's argument is unpersuasive. By May 9, 2012, defendant had already determined plaintiff's policy limit ($65,500) and the actual cost value of plaintiff's lost personal property

certain property. Decl. of Kyle A. Sturm 7, May 14, 2013, ECF No. 19-4. Provision (2) is not applicable because repair or replacement did not occur. Likewise, provision (4) is not applicable under the circumstances. Thus, because the actual cash value exceeded the amount of insurance shown, plaintiff is entitled to her policy limit.

($66,928). At that point, defendant was under an obligation to pay the policy limit under the contract and defendant's failure to make timely payment constitutes a minor breach of contract. Accordingly, plaintiff is granted summary judgment as to this issue, awarded pre-judgment interest[31] from May 9, 2012 until September 20, 2012 on the $10,500 payment, and is awarded reasonable attorney fees.[32]

## VI. Plaintiff's Claim for Additional Living Expenses

Plaintiff contends that defendant failed to fully compensate her for adjusted living expenses under the contract. In response, defendant argues that plaintiff was fully compensated for the time needed to "repair or replace the damaged property."

Under the "Coverage D – Additional Living Expenses" section, defendant is obligated to "pay the actual, reasonable and necessary increase in [plaintiff's] living expense to maintain [plaintiff's] normal standard of living while [plaintiff] live[s] elsewhere." Decl. of Kyle A. Sturm 9, May 14, 2013, ECF No. 19-4. Defendant's financial obligation is limited to "the shortest time needed . . . [t]o repair or replace the damaged property." *Id*. Defendant paid plaintiff $7,678.50[33] for additional living expenses arising between August 22, 2011 and April 30, 2012. Decl. of Malinda Hoffman 1, ECF No. 24-12. The parties dispute two issues; first, whether April 30, 2012 constitutes the appropriate cut-off date; and second, whether defendant fully paid plaintiff for adjusted living expenses arising between August 22, 2011 and April 30, 2012.

---

[31] Plaintiff is awarded pre-judgment interest at the rate of nine percent per annum. *See* OR. REV. STAT. § 82.010 (2011).

[32] Plaintiff's recovery of attorney fees is limited to those fees related to her personal property claim under the contract that arose between May 9, 2012 and September 20, 2012.

[33] Defendant paid plaintiff $2,500 on August 23, 2011, $2,500 on September 14, 2011, $347.39 on January 3, 2012, $781.11 on March 8, 2012, and $1,550 on March 15, 2012. Decl. of Kyle A. Sturm 2-3, 5 & 7-8, May 14, 2013, ECF No. 19-15.

From defendant's perspective, the additional living expenses replacement period began on February 10, 2012, when plaintiff received her $95,000 "mobile home" payment under the contract. *See* Decl. of Kyle A. Sturm 6, May 14, 2013, ECF No. 19-15. Defendant argues that a replacement dwelling of "like kind and quality" could be manufactured and installed within "6-8 weeks." Decl. of Malinda Hoffman 19, ECF No. 24-3; *see also* Decl. of Kyle A. Sturm 3, May 14, 2013, ECF No. 19-17 (estimating that a replacement dwelling could be "buil[t] [in] 4-5 weeks"). Thus, according to defendant, the April 30, 2012 deadline, more than 11 weeks after plaintiff's receipt of her "mobile home" payment, is reasonable under the contract.

From plaintiff's perspective, defendant's underlying time estimate is based upon an insufficient valuation worksheet and should be disregarded. Plaintiff argues that because the "mobile valuation worksheet" did not take into account "improvements made on the property," the underlying time estimate is also flawed. Pl.'s Mot. Summ. J. 8, ECF No. 23-1. In the alternative, plaintiff argues that even under the April 30, 2012 cut-off date, defendant failed to fully compensate plaintiff. Per plaintiff's estimate, she incurred $10,727.48 in additional living expenses, but only received compensation in the amount of $7,678.50. Thus, defendant failed to pay plaintiff "in the amount of $3,048.00." Pl.'s Mot. Summ. J. 5, ECF No. 23-1.

Defendant contests plaintiff's $10,727.48 figure. In particular, defendant argues that plaintiff's rental contract ($1,125 per month) is only effective for purposes of the contract from November 23, 2011 until April 30, 2012.[34] In other words, defendant argues that plaintiff is only entitled to $5,625 for rent incurred between November 23, 2011 and April 30, 2012. Def.'s Reply to Mot. Summ. J. 15, ECF No. 30. As to plaintiff's additional evidence raised in her reply

---

[34] The lease is dated November 23, 2011. Pl.'s Mot. Summ. J. 1, ECF No. 23-4.

brief (ECF No. 32-1),[35] this Court is reluctant to consider this exhibit at this time. *See e.g.*, *Zamini v. Carnes*, 491 F.3d 990, 997 (9th Cir. 1999) (citations omitted) ("The district court need not consider arguments raised for the first time in a reply brief"). Accordingly, a genuine issue of material fact exists as to the proper cut-off date under the contract and the sufficiency of payments between August 22, 2011 and April 30, 2012. Thus, plaintiff is denied summary judgment as to this issue.

## VII. Defendant's Duty of Good Faith and Fair Dealing

Plaintiff contends that defendant violated its duty of good faith and fair dealing by failing to conduct a reasonable investigation and valuation of plaintiff's lost manufactured home pursuant to ORS § 746.230. Plaintiff argues that this failure resulted in defendant's refusal to adequately pay under the "replacement" dwelling provision of the contract. Plaintiff's argument is unpersuasive.

Under ORS § 746.230, an insurer is prohibited from "refusing to pay claims without conducting a reasonable investigation based on all available information." OR. REV. STAT. § 746.230 (2011). Plaintiff directs this Court's attention to defendant's "1/2 page check the box style worksheet," and argues that this valuation was unreasonable as a matter of law. Even assuming the worksheet was unreasonable as a matter of law, there is no indication that defendant failed to pay because of this failure.[36] Rather, as indicated *supra* § 2(A) & (B), defendant refused to pay plaintiff because she sought a replacement dwelling that was not

---

[35] Plaintiff includes an "additional living expense worksheet" as exhibit 20. Plaintiff's exhibit includes an additional living expenses figure of $2,447.39 for costs incurred between August 22, 2011 and October 3, 2011. Pl.'s Response to Def.'s Reply to Mot. Summ. J. 1-2, ECF No. 32-1. If this figure is a correct assessment under the contract, then even under defendant's rent figure ($5,625), defendant underpaid by at least $393.89 (i.e., the difference between $8,072.39 and $7,678.50).

[36] For example, plaintiff received her policy limit ($96,000) for total loss of her dwelling.

23 – OPINION AND ORDER

covered under the contract and failed to replace within the replacement period. Accordingly, plaintiff is denied summary judgment as to this issue.

## CONCLUSION

For these reasons, defendant's motion for summary judgment (#16) and plaintiff's motion for summary judgment (#23) are GRANTED IN PART and DENIED IN PART.


IT IS SO ORDERED.


DATED this 21st day of October, 2013.


s/ Michael J. McShane
_____
Michael J. McShane
United States District Judge